James C. HULETTE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 4036.

United States District Court
W. D. Kentucky,
at Louisville.

Jan. 23, 1962.

William A. Young, Frankfort, Ky., Hazelrigg & Cox, Frankfort, Ky., for plaintiff.

Wm. E. Scent, U. S. Atty., Louisville, Ky., for defendant.

SHELBOURNE, District Judge.

This action was instituted by plaintiff James C. Hulette on September 9, 1960, seeking to recover (1) the sum of $120.00 alleged to have been illegally and erroneously assessed and collected as excise tax or, in the alternative, (2) the sum of $60.00 alleged to have been illegally and erroneously assessed and collected as excise tax. The assessment of the Commissioner of Internal Revenue resulting in the payment of excise tax in the sum of $120.00 by plaintiff was based on taxable events in 1946 and 1949. The case was submitted to the Court, by agreement of the parties, on a stipulation of facts and briefs of counsel.

The Court makes the following findings of fact and conclusions of law.

FINDINGS OF FACT

1. There is no issue of fraud and no issue of fact.

2. The Frankfort Country Club, Inc., is a Kentucky corporation organized and chartered by the Secretary of State of Kentucky on August 17, 1946, and is a social club within the meaning of Section 1710, Internal Revenue Code of 1939, 26 U.S.C.A. § 1710.

3. The original authorized capital stock of the Frankfort Country Club, as set forth in Article V of its Articles of incorporation, was in the amount of $90,-000.00, which was divided into 300 shares of non-negotiable common stock with a par value of $300.00 per share.

4. Under the bylaws of the Frankfort Country Club, the purchase of one share of common stock was a condition precedent to voting membership in the club. On October 22, 1946, plaintiff purchased one share of common stock of the Frankfort Country Club for the sum of $300.00 and received a certificate of membership.

5. January 18, 1949, pursuant to a resolution adopted at a meeting of the stockholders, Article V of the Articles of Incorporation of the Frankfort Country Club was amended so as to provide for authorized capital stock in the amount of $220,000.00, divided into the following shares and classes of shares:

(a) 300 shares of common stock to be issued in two classes:

(1) Class "A" common stock with a par value of $600.00, the holders of which were to be designated Class "A" Certificate Members, and

(2) Class "B" common stock with a par value of $300.00, the holders of which were to be designated Class "B" Certificate Members.

(b) 800 shares of preferred stock with a par value of $50.00 per share, totalling $40,000.00. (The preferred stock is not involved in this action.)

The total shares of both Class "A" and Class "B" common stock issued and outstanding were never to exceed 300 shares. The holders of the original common stock with a par value of $300.00 per share, as well as future holders of Class "B" stock, were given the right to convert same to Class "A" stock by paying an additional $300.00.

The amendment of Article V further provided that any holder of common stock, regardless of the class or number of shares held, should be entitled to only one vote and should have and enjoy the same rights and privileges, with the sole exception that holders of Class "A" Certificate Memberships should be required to pay annual dues in only one-half the amount of annual dues required to be paid by holders of Class "B" Certificate Memberships. The differential in dues was to be fixed and maintained so long as Class "B" Certificate Memberships were issued and outstanding.

6. The Frankfort Country Club has issued no Class "A" Certificate Memberships except to holders of one share of Class "A" common stock with a par value of $600.00, and has issued no Class "B" Certificate Memberships except to holders of one share of Class "B" common stock with a par value of $300.00.

7. In 1949, subsequent to the amendment of Article V, plaintiff converted his Class "B" common stock, evidenced by his certificate for the share of stock purchased October 22, 1946, to Class "A" common stock by paying an additional $300.00 and received a Class "A" Membership Certificate.

8. Continuously from the date of its incorporation up to and including the date of the filing of the complaint herein, the Board of Directors of the Frankfort Country Club has fixed and collected club dues of not less than $15.00 per member per quarter from holders of both Class "A" and Class "B" Certificate Memberships.

9. Since his initial purchase of one share of common stock on October 22, 1946, plaintiff has paid to the Frankfort Country Club the quarterly dues currently fixed by its Board of Directors plus excise tax in amounts equivalent to 20 per cent of such dues.

10. The excise tax paid by plaintiff on quarterly dues, together with all excise tax collected from other stockholders of the corporation, was reported and paid over each quarter to the Internal Revenue Service of the Treasury Department, using the form of return prescribed for reporting such taxes. The form used, currently Treasury Form 720—Quarterly Federal Excise Tax Return, is the same form prescribed by the Internal Revenue Service for reporting and paying tax on "initiation fees" under the provisions and terms of Section 1710 of the Internal Revenue Code of 1939 and Sections 4241 and 4242 of the Internal Revenue Code of 1954, as amended, 26 U.S.C.A. §§ 1710 and 4241, 4242. However, the plaintiff's payment of $300.00 for one share of common stock in October, 1946, and his additional payment of $300.00 to convert his stock to Class "A" common stock in 1949 were not reported to the Internal

Revenue Service and the club did not collect or pay over any excise tax thereon.

11. Upon an audit of the books of the Frankfort Country Club, Inc., in 1959, the Commissioner of Internal Revenue determined that plaintiff owed a 20 per cent excise tax on the share of stock purchased for $300.00 in October, 1946, and on the additional $300.00 paid in 1949 to convert said stock to Class "A" common stock. Accordingly, a deficiency assessment of $120.00 was made against plaintiff on March 21, 1960. Plaintiff paid this assessment on May 11, 1960, and filed a timely claim for refund on May 11, 1960, which claim was disallowed and notice of disallowance was sent by registered mail on July 13, 1960.

## CONCLUSIONS OF LAW

This Court has jurisdiction of this action by virtue of Title 28, United States Code, Section 1346(a) (1).

The pertinent sections of the Internal Revenue Code of 1939, as amended, which were in effect in the years 1946 and 1949 covered in this action, provide:

"Sec. 1710. Tax

"(a) Rate. There shall be levied, assessed, collected, and paid—

\* \* \* \* \*

"(2) Initiation fees. A tax equivalent to 20 per centum of any amount paid as initiation fees to such a club or organization, if such fees amount to more than $10, or if the dues or membership fees, not including initiation fees, of an active resident annual member are in excess of $10 per year.

\* \* \* \* \*

"(b) By whom paid. The taxes imposed by subdivision (a) shall be paid by the person paying such dues or fees, or holding such life membership."

"Sec. 1712. Definitions

"As used in this chapter—

\* \* \* \* \*

"(b) Initiation fees. The term 'initiation fees' includes any payment, contribution, or loan, required as a condition precedent to membership, whether or not any such payment, contribution, or loan is evidenced by a certificate of interest or indebtedness or share of stock, and irrespective of the person or organization to whom paid, contributed, or loaned."

"Sec. 3312. Period Of Limitation Upon Assessment And Collection.

" \* \* \* (a) General Rule. All internal revenue taxes shall (except as provided in subsections (b), (c), and (d)) be assessed within four years after such taxes became due, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of five years after such taxes became due.

"(b) False Return or No Return. In the case of a false or fraudulent return with intent to evade tax, or of a failure to file a return within the time required by law, the tax may be assessed, or a proceeding court for the collection of such tax may be begun without assessment, at any time. \* \* \*"

Plaintiff has conceded that his original purchase of stock in 1946 was taxable in the amount of $60.00 under Section 1710 (a) (2), but he contends that Section 3312(a) bars the assessment and collection of such tax. Plaintiff alleges that his additional payment of $300.00 in 1949 to convert his stock to Class "A" common stock is non-taxable under Section 1710(a) (2) or, in the alternative, the $300.00 payment is taxable but barred from assessment and collection by Section 3312(a).

■ With respect to plaintiff's contention that assessment and collection is barred by the statute of limitations, Section 3312(b) provides that a failure to file a return precludes the application of the limitations provided by Section 3312(a). Plaintiff has admitted that no excise tax was paid on his original stock purchase in 1946 or the additional payment in 1949, and that said payments were not reported on the quarterly ex-

cise tax returns filed by Frankfort Country Club for the periods involved.

In considering the question of limitations in the case of McDonald v. United States, D.C., 196 F.Supp. 415, 419, Judge Ford said:

"By the provisions of Section 1710 (b) it was the duty of the plaintiff to pay the tax and under Sections 1715(a) and 1716, 26 U.S.C.A. §§ 1715(a), 1716, it was the duty of the club to collect from the plaintiff the taxes imposed under Section 1710 and make returns thereof under oath as prescribed by the applicable regulations. The admitted fact set out in paragraph 5 of the Stipulation that the club 'did not report the purchase of such bond by the taxpayer nor did it collect and pay over any tax thereon' seems sufficient to preclude the application of the Statute of Limitations on which defendant (sic) relies."

There is no apparent distinction between the McDonald case and the case at bar. The language of Judge Ford's opinion justifies the conclusion here that the Commissioner's assessment against the plaintiff made in 1960 was not barred by the limitations of Section 3312(a). See also People's Outfitting Co. v. United States, 58 F.2d 847, 851, 74 Ct.Cl. 419; Cohan v. United States, D.C., 198 F. Supp. 591, 602.

By the purchase of one share of the corporation's common stock on October 22, 1946, plaintiff became a member of the Frankfort Country Club with full rights and privileges. The purchase of a share of stock being a "condition precedent to membership" provided in the club's bylaws, the payment therefor was subject to the 20 per cent excise tax imposed by Section 1710(a) (2) and plaintiff has so conceded.

The remaining question to be determined is plaintiff's tax liability with respect to the additional $300.00 payment made in 1949 which converted his stock to Class "A" common stock as provided by the amendment of Article V adopted on January 18, 1949. Plaintiff contends that his payment of the additional amount was not a "condition precedent to membership" and cannot be considered an initiation fee since he was a member of the club prior to the payment and could have continued as such with full privilege to enjoy all facilities of the club without making the additional payment. Therefore, it is alleged that said payment is not taxable under Section 1710(a) (2).

Defendant contends that the additional payment of $300.00 was required as a condition to Class "A" Certificate Membership, therefore, it was an initiation fee as defined in Section 1712 and subject to the tax imposed by Section 1710(a) (2).

Organizations such as the Frankfort Country Club customarily have various classes of membership, each of which requires the payment of an initiation fee. The language of the statute defining initiation fees clearly states that such fees include "any payment, contribution, or loan required as a condition precedent to membership." Thus, the payment of an amount as a condition precedent for the class of membership sought is an initiation fee.

The question of tax liability on initiation fees for classes of membership is discussed in the Matter of Riverlake Country Club, Debtor, (D.C.Texas) 1960, 203 F.Supp. 442. Resident and nonresident memberships were recognized by that club. The initiation fee for resident membership was $400.00 and $50.00 for non-resident; membership in either class could also be had through the purchase of a $1,000.00 bond of the club. The Government sought to impose the 20 per cent excise tax on memberships acquired through the purchase of the bonds. Since membership could have been obtained for less than $1,000.00, the entire amount was not considered as "a Condition precedent to membership." The District Judge adopted and concurred in the following statement of the Referee in Bankruptcy:

"The value of what the purchaser of a Riverlake bond got in the way of a club membership was $400 if he took a resident membership and

$50 if he became a non-resident member. The government would impose a tax of $200 in either event. Under the position the club takes the tax is $80 for resident memberships and $10 for non-residents. I find myself in agreement with the club's view."

In the case at bar, it is apparent that the value of what plaintiff received in taking the Class "A" Certificate Membership was $600.00, and that the payment of the additional $300.00 in 1949 was a condition precedent to such membership. Therefore, said payment is subject to the tax imposed by Section 1710(a) (2).

A judgment is this day entered dismissing the complaint and awarding to the United States the taxable costs of this action.